UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kari Smart et al.

    v.                                                                                   Case No. 22-cv-436-PB
                                                                                 Opinion No. 2024 DNH 066

Strafford County et al.

MEMORANDUM AND ORDER

Alyssa Burson was arrested by a Somersworth Police Department (SPD) officer and detained for a brief period at the Somersworth Police Station. She was later transferred to the Strafford County House of Corrections (SCHOC), where she died in custody. The administrator of Burson's estate and her minor son have sued several municipal and county defendants as well as various associated individuals for wrongful death and other federal and state claims. Plaintiffs have moved to amend their complaint a second time to name SPD Dispatcher Skip Pepin, SCHOC Nurses Monique O'Haire and Renee Jerram, and SCHOC Correctional Officer Taylor Sims as new defendants. Because I determine that plaintiffs' claims against the new defendants are barred by the statute of limitations, I deny their motion.

1

## I. BACKGROUND[1]

### A. Factual Background

On July 7, 2020, an SPD officer arrested Burson at a Walmart in Somersworth, New Hampshire for theft and violating a protective order. Doc. 1 at 8. Burson, who had been previously diagnosed with endocarditis—an infection of a heart valve—began to have trouble breathing while she was detained at SPD headquarters. Id. at 7, 9-12. She was then transferred to SCHOC, where she presented with swollen limbs and experienced further difficulty breathing. Id. at 12-17. Despite repeatedly seeking help from officers at SPD and personnel at SCHOC, Burson received no medical treatment and died on the morning of July 8, 2020. Id. at 9-19.

### B. Procedural Background

Prior to filing their complaint, the administrator of Burson's estate and Burson's minor son, proceeding through his guardian and next friend, sent a right-to-know request to the Strafford County Department of Corrections

---

[1] The following facts are drawn, in part, from an affidavit filed by defendants and are not disputed by plaintiffs. See Doc. 26-2. Though such documents are generally not properly considered when ruling on a motion to amend a complaint, Ahman v. Day, 647 F. Supp. 3d 272, 282 (S.D.N.Y. 2022), facts drawn from defendants' affidavit are provided only for background context and are irrelevant to my analysis, which is based exclusively on the allegations set forth in plaintiffs' complaint and information drawn from the docket.

("SCDOC") in January 2022. Doc. 26-2 at 1. In June 2022, SCDOC sent plaintiffs a thumb drive containing documents and video footage from Burson's incarceration at SCHOC.[2] Id. at 2. The thumb drive included Burson's entire medical file going back several years; twelve audio recordings of witness interviews, including interviews of O'Haire and Jerram; a list of all corrections and medical staff on duty the night of Burson's death, including Sims; and SCDOC's operational guidelines, including a guideline titled "Medical Assessments." Id. at 2.

In response to another right-to-know request sent by plaintiffs in March 2022, the Strafford County Sheriff's Office sent plaintiffs the incident report from Burson's death in June 2022. Id. The report identified Sims, O'Haire, and Jerram as SCHOC employees who had contact with Burson during her incarceration. Id. at 3. Specifically, the report noted that Sims encountered Burson at intake and observed her shortness of breath, that O'Haire knew of a call in which Burson's swollen legs were discussed but did not assess her, and that Jerram looked in on Burson as she slept but did not assess or treat her. Id.

---

[2] The June 2022 thumb drive was a copy of an earlier May 2022 thumb drive that plaintiffs were unable to open. Id. at 2.

In February 2022, plaintiffs also sent right-to-know requests to SPD. SPD responded later that month and provided police reports, dispatch logs, video footage, and a list of employees on duty the evening of Burson's death, including Pepin. Doc. 27-1 at 1.

Plaintiffs filed suit in this court in October 2022. Doc. 1. They sued several municipal and county defendants—including Strafford County, SCDOC, SCHOC, the City of Somersworth, and SPD—as well as various individuals associated with those entities—including the superintendent of SCDOC, several SPD officers, several SCHOC officers, and an unspecified number of "John and Jane Doe Defendants."[3] Doc. 14. The complaint alleges that all of the defendants violated Burson's Fourteenth Amendment Due Process right to receive adequate medical care and are liable for wrongful death and loss of consortium under New Hampshire state law. Id. at 24-29. The complaint also brings a claim against the municipal and county defendants for disability discrimination in violation of Title II of the Americans with Disabilities Act, codified at 42 U.S.C. §§ 12132 et seq. Id. at 27-28.

---

[3]   For clarity and convenience, I refer to defendants SCDOC, SCHOC, and individuals associated with these entities as "Strafford County Defendants" and defendants City of Somersworth, SPD, and individuals associated with these entities as "Somersworth Defendants."

4

In February 2023, the Strafford County Defendants sent their initial disclosures to plaintiffs, indicating that Sims, O'Haire, and Jerram had discoverable information. Doc. 26-2 at 3. In the same month, the parties agreed on a discovery plan setting June 1, 2023, as the deadline for plaintiffs to amend their complaint and April 15, 2024, as the deadline for the completion of discovery. Doc. 15 at 2-3. The court then endorsed the plan as a scheduling order. Feb. 21, 2023, Docket Entry.

In June and November 2023, plaintiffs sent discovery requests to the named Strafford County Defendants, but sought no information from Sims, O'Haire, or Jerram. Doc. 26-2 at 4. Between February and March 2024, plaintiffs deposed five named Strafford County Defendants and two named Somersworth Defendants. Id.; Doc. 24-3 at 2-3. At the end of March 2024, plaintiffs sought to depose Sims, who was on leave at the time, Doc. 26-2 at 4, and shortly thereafter, plaintiffs deposed Pepin, Doc. 24-4 at 3.

Through deposition testimony, plaintiffs learned that SPD had an internal policy requiring dispatchers to monitor detainees in holding cells but that Pepin intentionally lowered the audio surveillance on the night of Burson's arrest.[4] Doc. 24-3 at 5-6. Plaintiffs also discovered that Sims noted

---

[4] While plaintiffs do not cite an affidavit in support of the information unearthed through discovery, I assume the statements made in their Memorandum are true for purposes of analysis.

5

that Burson "was suffering from an obvious medical condition that should have prompted immediate medical treatment" but that he failed to seek care for her. Id. at 6. Finally, plaintiffs discovered that two of the nurses, O'Haire and Jerram, failed to conduct a medical assessment of Burson after being contacted by an SCHOC officer regarding her swollen legs. Id.

In April 2024, plaintiffs filed a motion to amend their complaint, seeking to replace the John and Jane Doe Defendants with Pepin, Sims, O'Haire, and Jerram. Doc. 24.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides the standard of review for motions to amend. Rule 15(a) allows one amendment as "a matter of course," but subsequent amendments require either the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a). Such leave should be granted "when justice so requires." Id. Although Rule 15(a) sets forth a liberal amendment policy, leave to amend need not be "mindlessly" granted. Mulder v. Kohl's Dep't Stores Inc., 865 F.3d 17, 20 (1st Cir. 2017) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006)). A motion to amend may be rejected if it is futile, unduly delayed, made in bad faith, the result of repeated failures of due diligence, or unfairly prejudicial to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962). The number of

prior amendments to the complaint is also relevant to the analysis. ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 56 (1st Cir. 2008).

Courts examine the futility of an amended complaint under the same standard that is used to assess a motion to dismiss based on Rule 12(b)(6). See Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 40 (1st Cir. 2022). Accordingly, a proffered claim must be facially plausible, allowing a court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). An amended complaint is futile if the relevant statute of limitations has lapsed. See Rife v. One West Bank, F.S.B., 873 F.3d 17, 20-21 (1st Cir. 2017); Chalifoux v. Proto Labs, LLC, 2023 DNH 092, 2023 WL 4931858, at *3 (D.N.H. Aug. 2, 2023).

### III.  ANALYSIS

Defendants contend that the motion to amend must be denied as futile because plaintiffs' claims against the new defendants are barred by New Hampshire's three-year statute of limitations. See N.H. Rev. Stat. Ann. 508:4. Plaintiffs do not challenge defendants' claim that plaintiffs waited more than three years after Burson died to file the motion to amend. Nor do they argue that the statute of limitations was tolled because of the discovery rule. See, e.g., Lamprey v. Britton Constr., Inc., 163 N.H. 252, 256-57 (2012) (explaining the discovery rule). Instead, plaintiffs argue that their new claims

relate back to the filing of their original complaint pursuant to Federal Rules of Civil Procedure 15(c)(1)(A) and 15(c)(1)(C).

Rule 15(c)(1)(A) provides that amendments may relate back to the time of the original pleading if the relevant statute of limitations allows relation back. Rule 15(c)(1)(C), in turn, allows for relation back if the amendment "changes [a] party or the naming of [a] party," but only if (1) the amendment asserts a new claim or defense that arose out of the same conduct, transaction, or occurrence as the original pleading, and (2) the new party received appropriate notice of the action and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." I first consider plaintiffs' reliance on Rule 15(c)(1)(C) before turning to the relevance of Rule 15(c)(a)(1).

A.   Rule 15(c)(1)(C)

Notwithstanding plaintiffs' arguments to the contrary, Rule 15(c)(1)(C) does not authorize relation back in this case. Rule 15(c)(1)(C) only applies in cases of misnomer or misidentification. It does not apply when the statute of limitations has run because a plaintiff failed to discover a claim against a new party within the limitation period. Wilson v. United States, 23 F.3d 559, 563 (1st Cir. 1994). Nor can the rule be circumvented by naming John Doe defendants in the original complaint and later substituting new defendants

8

for the John Doe defendants. Herrera v. Cleveland, 8 F.4th 493, 499 (7th Cir. 2021); Murphy v. Strafford Cnty., 2022 DNH 007, 2022 WL 124673, at *2 (D.N.H. Jan. 13, 2022).

Plaintiffs concede in their reply brief that they do not seek leave to amend "based on the misnomer of a current defendant or mistaken identity." Doc. 30 at 6. Rather, they seek to add new parties based on information "naturally unearthed" through discovery. Id. Because Rule 15(c)(1)(C) does not authorize relation back for this type of problem, it does not entitle plaintiffs to the relief they seek.

B.     Rule 15(c)(1)(A)

Plaintiffs' argument based on Rule 15(c)(1)(A) fails for similar reasons. The New Hampshire Supreme Court has sometimes permitted relation back in cases of misnomer or mistaken identity, see, e.g., Dupuis v. Smith Properties, Inc., 114 N.H. 625, 627-28 (1974), but it has never used relation back to allow a new defendant to be named after the statute of limitations has run simply because a plaintiff has failed to discover that she has a claim against a defendant within the limitations period. Further, the New Hampshire Supreme Court has flatly rejected the proposition that a complaint's "generalized assertion of a class of potential defendants is specific enough to qualify as a named party that can be 'clarified' by subsequent

9

amendment after the expiration of the statute of limitations." Perez v. Pike Indus., Inc., 153 N.H. 158, 163 (2005). As the court explained, it considered such a position to be "untenable" because it would improperly allow plaintiffs to circumvent the statute of limitations. Id. Because New Hampshire law provides the statute of limitations for all of plaintiffs' claims, and New Hampshire law does not permit relation back for the reasons specified by plaintiffs, plaintiffs' new claims cannot be saved by Rule 15(c)(1)(A).

## IV.  CONCLUSION

For the foregoing reasons, plaintiffs' motion for leave to file a second amended complaint, Doc. 24, is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

August 16, 2024

cc:   Counsel of Record